In the Matter of WARREN POTASH et al., Respondents, v. STANLEY MOLIK, as Clerk of the City of Buffalo, Appellant.

Fourth Department, October 3, 1962.

112

Elmer S. Stengel, Corporation Counsel (Carl Tronolone of counsel), for appellant.

David K. Floyd for respondents.

Per Curiam. This appeal presents the question of the sufficiency of the authentication of a petition for a referendum under section 16 of the City Home Rule Law, with respect to a local law increasing the salaries of the councilmen of the City of Buffalo during their terms of office. Under section 17 of the City Home Rule Law, the local law was subject to a permissive referendum. Section 16 of the City Home Rule Law provides that in the case of a local law falling within section 17, a referendum shall be held "if within forty-five days after its adoption there be filed with the city clerk a petition signed and authenticated as herein required by qualified electors of such city, registered to vote therein at the last preceding general election, in number equal to at least ten per centum of the total number of votes cast for governor at the last gubernatorial election in such city, protesting against said local law ".

The petition as filed with the City Clerk within the 45-day time limit contained 46,192 signatures. The number of valid signatures required under the formula given in the statute was 19,267.

Section 16 of the City Home Rule Law provides for an examination by the City Clerk to determine whether the petition complies " with all the requirements of law ". The statute also provides that: " If within thirty days after the filing of such a petition a written objection thereto be filed with the supreme

court, or any justice thereof, of the judicial district in which such city or any part thereof is located, such court or justice shall determine any question arising thereunder and make such order as justice may require. Such proceeding shall be heard and determined in the manner prescribed by section three hundred thirty-five of the election law.'' No written protest was filed by anyone under this provision but the City Clerk undertook an examination of the petition pursuant to the authority vested in him.

The City Clerk found that 4,624 signatures were not valid for a variety of reasons. He also found that 6,012 signatures should be voided because '' the petition contained substantial alterations ''. This made a total of 10,636 signatures which were invalid according to the City Clerk but this still left 35,556 valid signatures, apart from any question of authentication. However, the City Clerk held that 23,721 of these signatures should be voided because of defects in the authenticating statements. This left only 11,835 acceptable signatures, which was less than the number required by law, and hence the City Clerk certified that the petition was insufficient and did not comply with the requirements of law.

Two forms of authenticating statement had been used on the petition sheets. One form was held to be proper by the City Clerk but he found that there had been individual defects in filling out the form which resulted in the invalidation of sheets containing 4,494 signatures. The other form of authenticating statement, used on 1,465 sheets containing 19,227 signatures, was held by the City Clerk not to comply with the requirements of law. This holding on the part of the City Clerk gives rise to the only issue upon this appeal. It was stipulated upon the oral argument by the Corporation Counsel that, if the City Clerk's position was not upheld with respect to the sheets containing the 19,227 signatures upon the general ground given by him, the other defects either with respect to signatures or subscribing witnesses' statements were not sufficient in number to warrant the rejection of the petition and that the number of valid signatures properly authenticated still remaining would be in excess of the minimum required by law.

In the article 78 proceeding at Special Term, the court held that the City Clerk's general objection to the contested form of subscribing witness' statement was not valid and it also held that a great many of the detailed objections relied upon by the City Clerk were not valid. The court accordingly annulled the determination by the City Clerk and directed him to with-

draw and vacate the certificate filed by him and further directed that he re-examine the petition and make a new certificate within 30 days.

An appeal was taken to this court by the City Clerk from that order. During the pendency of the appeal the City Clerk, after obtaining an extension of time, completed his re-examination of the petition in the light of the rulings made at Special Term and on September 11, 1962, filed a new certificate showing that there were only 8,212 invalid signatures, leaving 37,980 valid signatures, and that therefore the petition was sufficient and complied with the requirements of law. However, this certificate expressly stated that it would be deemed null and void if the City Clerk should be successful upon appeal and further reserved the right to revise and alter the certificate pursuant to any order which might be handed down by any appellate court in the pending appeal. The new certificate was obviously filed by the City Clerk under the compelling force of the rulings made in the Special Term decision and cannot be deemed to be a voluntary act. Therefore the City Clerk cannot be held to have waived or abandoned his appeal and the case cannot be considered moot.

Leave to appeal to this court from the order of Special Term was not asked of, or granted by, the Special Term, but, in our opinion, the order was a final one within the meaning of sections 1300 and 1304 of the Civil Practice Act, since it effectively terminated the article 78 proceeding, and therefore leave to appeal was not necessary. In any event, both sides have asked us to regard the order as a final order and we have accordingly entertained the appeal.

In our opinion, the contested form of authenticating statement substantially complied with the requirements of section 16 of the City Home Rule Law and the relevant provisions of the Election Law so far as they were applicable.

Section 16 of the City Home Rule Law as amended by chapter 867 of the Laws of 1939 provides that " the signatures to each sheet shall be signed and authenticated in the manner provided by the election law for the signing and authentication of designating petitions so far as applicable ". The statute had formerly read that the petition " shall be authenticated in the manner provided by section one hundred and thirty-five of the election law for the authentication of designating petitions." (L. 1924, ch. 363, § 16.) Section 135 of the Election Law is the section dealing with designating petitions so the omission of the section number in the 1939 revision is of no significance but the addition of the words " so far as applicable " is, as will be seen, of great

significance. Section 31 of the City Home Rule Law provides: "This chapter shall be construed liberally".

Section 135 of the Election Law provides that the signers of a designating petition may appear before a person authorized to take affidavits and swear to the truth of the statements made by them in the petition or in lieu of such authentication there may be appended to each sheet of the petition "a signed statement of a witness, who is a duly qualified voter of the state and an enrolled voter of the same political party as the voters qualified to sign the petition, and who is also a resident of the same political unit in which the office or position is to be voted for * * * as to the subscription thereof". The statement (by virtue of L. 1954, ch. 745) is made the equivalent of an affidavit and "if false shall subject the witness to the same penalties as if he had been duly sworn".

The form of the statement by the subscribing witness for use upon a designating petition is prescribed in subdivision 3 of section 135. It "shall be substantially as follows:

### " STATEMENT OF WITNESS

"I, .................. (Name of witness) state: I am a duly qualified voter of the state of New York; an enrolled voter of the............party and now reside in the............(fill in number) election district of the.............(fill in Assembly district, if in New York city, ward in any other city, or town, if outside city) in the city, town or village of............, in the county of................, in such state, at..........(fill in street and house number and postoffice) therein. I was last registered for the general election in the year........from ..............(fill in street and house number and postoffice) in the................(fill in city, town or village) in the county of..............in such state. The said residence was then in the........(fill in number) election district of the............ (fill in Assembly district, if in New York city, ward in any other city, or town, if outside city). I know each of the voters whose names are subscribed to this petition sheet containing (fill in number)...........signatures and each of them subscribed the same in my presence and upon so subscribing declared to me that the foregoing statement, made and subscribed by him, was true.

..............................
Signature of witness.

Date ...................."

The form of statement which is in controversy here reads as follows: "I state that I am a duly qualified voter of the state of New York; reside in the City of Buffalo at the street address therein shown beneath my signature hereto; and that I was duly registered for the general election 1961 in said city, in the Ward and election district shown below. I know each of the voters whose names are subscribed to this petition sheet containing...........signatures and each of them subscribed the same in my presence and upon so subscribing declared to me that the foregoing statement made and subscribed by him, was true.

...........................
Signature of witness

...........................
Street address        Ward — Election District

Date ...................."

It will be noted that the contested form does not make any reference to the enrollment of the witness in any political party but it is conceded that this part of section 135 and the corresponding provisions of the form contained therein are not applicable to witnesses upon a referendum petition.

The principal respect in which the Corporation Counsel claims that the form is defective is that it does not expressly state the residence of the witness at the time he was registered in the ward and election district given by him. This, the Corporation Counsel contends, greatly increases the difficulty of determining whether the witness was in fact registered in the ward and election district given, since the printed books of the registered voters in each ward list the voters within each election district by street and street number. [The Corporation Counsel's argument disregards the ready availability at the Board of Elections of the master alphabetical index of all registered voters, maintained pursuant to the permanent personal registration statute (Election Law, art. 15, §§ 350–416), which is discussed below.] The Corporation Counsel recognizes that the contested form calls upon the witness to give his present street address and he recognizes that the registration of the witness could readily be checked in the printed ward registration books upon the assumption that the address of the witness at the time he registered in the ward and district given was the same as his present address. But he argues that, if the witness had moved after he registered, his name would not be found

in the printed ward registration book at the address given by him. Therefore he concludes that the form of the statement is invalid as a matter of law, without regard to the question of whether any of the witnesses who used the form had in fact moved between the time of their registration and the time of their signing the statement.

The argument by the appellant is thus a purely theoretical and hypothetical one. But before we examine the argument in detail, we should re-examine the contested form of authentication statement to determine whether the Corporation Counsel's construction of it is correct and whether the omission of which he complains really exists. We believe that his reading of the form is too narrow and hypercritical. We believe that, upon a fair reading of the form, it will be found that it gives all the information required by section 135 of the Election Law, so far as it is applicable to the authentication of a referendum petition.

The form of statement may reasonably be construed as meaning that the street address given was both the residence of the witness at the time of signing and his residence at the time of registration. It is stated in the body of the statement that the street address shown below is the place of present residence but the address is given beneath the signature on a continuous line with the ward and election district which are stated in the body of the statement to have been the ward and election district in which the witness was registered for the general election in 1961. It may therefore reasonably be inferred that the street address was meant to serve a dual function and to represent, in accordance with the body of the statement, the present residence of the witness and, in accordance with its position adjoining the statement of ward and election district at the time of registration, the residence of the witness at that time also. In the absence of any statement to the contrary, the subscribing witness must be deemed to have impliedly represented that his residence was the same at the time of registration and at the time of signing the statement. The form of the statement therefore was in full compliance with section 135 of the Election Law.

Furthermore, even if we assume for the purpose of argument, that the contested form of statement does not carry with it an implied representation by the witness that his residence at the time of registration was the same as that at the time of signing, the defect or omission is not of so substantial a character as to invalidate the authentication.

Where a witness gives his present address, and gives the ward and district in which he registered at the last election, any interested person checking the petition would have the right to assume, at least in the first instance, that the witness' residence at the time of registration was the same as his residence at the time of signing the statement, even though the witness had not expressly or impliedly said so. If upon checking the petition, upon the basis of this assumption, he found that the name of a witness did not appear in the ward registration books at the address given, the petition sheet authenticated by that witness could be rejected, at least prima facie. But this would not justify the wholesale rejection of all the petition sheets containing the contested form of authenticating statement.

This is substantially the same situation as exists, with legislative approval, or at least acquiescence, with respect to the *signers* of a designating petition under section 135 of the Election Law. The form prescribed in section 135 of the Election Law provides that the signer shall state his present address and the ward and district in which it is located. There is no provision for a statement of the address from which he had registered and enrolled as a voter of the political party for whose primary the petition is intended. The Legislature apparently contemplated that the signer's registration and enrollment would be checked upon the assumption that his present residence and present ward and district were the same as the residence from which, and the ward and district in which, he had registered. If he had moved since the last preceding registration day and had not corrected his registration at the Board of Elections, his signature would be declared invalid, at least prima facie, upon the checking of his petition by the Board of Elections in a designating petition case under section 135. The form of the petition in this case was adapted from the form of petition given in section 135, with appropriate changes. The provision that the signer was a duly enrolled voter of a named party and was entitled to vote at the next primary election of such party and other similar provisions were dropped out as inapplicable and there was substituted therefor the statement that he was registered to vote in the City of Buffalo at the last general election in 1961, in accordance with the provisions of section 16 of the City Home Rule Law. It is conceded by the appellant that, so far as the signers are concerned, the form of the petition used in this case is in full compliance with the statute, even though it calls only for the present residence of the signer and the ward and district of such residence. As has been pointed out, the registration data as to the signer must be

checked on the assumption that his residence and ward and district at the time of his registration were the same as they were at the time of his signing the petition, in the absence of any statement to the contrary. Similarly, the registration data with respect to the subscribing witness may be verified or checked on the basis of the same assumption.

In view of the right of any interested person to check the authenticating statements upon this basis, the omission of an express or implied statement by the witness that his residence address was the same at the time of registration and at the time of signing, is of no real consequence. Any person desiring to object to the petition is in no way prejudiced by the omission. He will have the same right to insist upon the rejection of any sheet authenticated by a witness whose name does not appear in the ward and election district list at the address given in his statement as he would have had if the witness had expressly stated that his address at the time of registration was the same as it was at the time of signing.

In order to illustrate how it would have worked out in our case, if the authenticating statements had been checked on the basis of the assumption given, the court has had an examination made of the 1,465 sheets containing the contested form of statement, by its own staff. It was found that 105 sheets (containing 1,315 signatures) were not correctly filled out by the witness, the address or ward or district being omitted or being incorrectly given. These individual errors or omissions might have justified the rejection of these sheets, but of course they do not have any bearing upon the sufficiency of the form used. Of the authenticating statements which were correctly filled out (1,360 sheets), there were only 7 sheets (authenticated by 5 witnesses) in which the witness' name did not appear in the ward registry books at the address given, in the ward and district given. These 7 sheets contained 90 signatures. All the remaining sheets (1,353 sheets) were found to have been authenticated by subscribing witnesses whose names appeared in the 1961 registration books in the ward and election district given by them and at the street addresses given by them. These sheets contained 17,822 signatures out of the 19,227 signatures in controversy here. These, added to the other concededly valid and properly authenticated signatures, produce a total well over the minimum number required under the City Home Rule Law. [Incidentally, it may be noted that the 5 witnesses mentioned above, were found to have been duly registered from other addresses, from which they had subsequently moved. Their addresses at the time of registration were readily ascer-

tained through the master alphabetical index, but for the purpose of the present argument, it is assumed that it would have been proper to reject their sheets since their names did not appear in the wards and districts given by them at the addresses given by them.]

The Corporation Counsel's position therefore amounts to this: that in the case of a subscribing witness who gave only his present street address, but who gave the ward and district in which he had registered and whose street address was actually the same at the time he registered as it was at the time he signed the authentication statement, the statement is fatally defective if the witness failed to state that the address was the same.

We need not decide whether the defect would be fatal in the case of a designating petition under section 135 of the Election Law. It may well be that it would be so regarded in view of the strict compliance with the form of statutory statement required in election cases (*Matter of Crosbie* v. *Cohen,* 281 N. Y. 329; but see *Matter of Baum,* 268 N. Y. 614).

However, the problem before us is very different from that in an election case. We are not here concerned with the respective rights of rival candidates or nominees. The question is only whether there is a sufficiently authenticated petition on behalf of the electorate of the city to call for a referendum upon a local law for which the statute provides a permissive referendum. We are directed by section 31 of the Home Rule Law to construe the provisions of the whole chapter '' liberally ''. Furthermore, this is not a case in which the letter of the law could have been readily complied with simply by following the form given in section 135 of the Election Law. The form obviously was not applicable *in toto.* A new form had to be devised to comply with the provisions of section 16 of the City Home Rule Law, adopting and adapting so much of the statutory form as could reasonably be found to be applicable. In this situation, we do not believe that the failure to state that the witness' address at the time of registration was the same as his present address is so substantial a deviation from the statutory requirement as to invalidate the form of the statement.

The inconsequential character of the omission of an express statement that the place of residence was the same at the time of registration is especially evident in a city which has adopted permanent personal registration under article 15 (§§ 350 to 416) of the Election Law. The City of Buffalo and the County of Erie have been operating under that system since 1957. Pursuant thereto, a master alphabetical index of all registered voters is maintained. If any one checking a petition cannot

find the name of a witness at the address given by him in the ward and election district given, he may readily determine whether he was in fact registered at a former address in the city, by recourse to the master index. This would take a few minutes but it would have to be done only in the comparatively small number of cases in which the name was not readily found in the printed ward lists. For the purpose of the present case, we have assumed that it would be proper to reject a petition sheet if the witness' name could not be found at the address given by him in the ward and election district given but the fact that, even in such a case, the residence of the witness at the time of his registration could readily be ascertained by recourse to the master alphabetical index indicates how inconsequential the omission of the address at the time of registration is, in a city maintaining a master index.

The Corporation Counsel also raises in his brief the point that in the contested form of authenticating statement, the witness did not state the ward and district in which his present residence was located but only stated the ward and district in which he had registered in 1961, but this point is not seriously pressed as a ground for invalidating the statement. Clearly, the ward and district of the witness' present residence is of no value in the process of checking a referendum petition. It is of value in a designating petition, where the election is to be held in a subdivision or part of the city and the statement of the ward and district readily shows whether the witness resides in the appropriate political subdivision of the city but this is obviously inapplicable in the case of a city-wide referendum. Furthermore, if as has been held earlier in this opinion, the witness should be deemed to have represented by implication that his present address is the same as the one from which he registered, the statement by him of the ward and district in which he registered, gives all the desired information. It should also be noted that a street index is available at the Board of Elections from which the ward and district in which any given street address is located may readily be ascertained. It is also of interest to note that in the case of independent nominating petitions, as to which the witness is not required to be a resident of the same political unit as that for which the nomination is to be made, the requirement of the statement of the ward and district of the present residence of the witness was eliminated by chapter 745 of the Laws of 1954 upon the recommendation of the Joint Legislative Committee on the Election Law. The Committee stated: " Such information serves no useful purpose and is unnecessary " (N. Y. Legis. Annual, 1954, pp. 124–125).

The order appealed from should therefore be affirmed and, in view of the stipulation referred to above, the appellant should be directed to transmit to the appropriate authorities, for submission to the electorate at the next general election, the question of whether the local law referred to in the petition should be approved.

The oral application for leave to appeal to the Court of Appeals should be granted.

WILLIAMS, P. J., BASTOW, GOLDMAN, HALPERN and McCLUSKY, JJ., concur.

Order unanimously affirmed, without costs of this appeal to any party. Oral application for leave to appeal to the Court of Appeals granted.