George M. Fahelli, J.
This is an article 78 proceeding in the nature of mandamus wherein petitioners, electors of the Town of Haverstraw, seek to compel the Town Board to schedule and hold permissive referendum to approve or disapprove a town resolution for the construction of an incinerator and disposal plant and for the expenditure of $800,000.
The material facts are not in dispute.
On June 10, 1963 respondent Town Board unanimously adopted a resolution authorizing the construction of an incinerator and disposal plant and further authorizing an expenditure of $800,000 to be financed by a bond issue. Such resolution is, by virtue of section 81 of the Town Law, subject to a permissive referendum on petition. The machinery implementing such referendum is found in section 91 of the Town Law, which provides inter alia, that such resolution “ shall not take effect until thirty days after its adoption; nor until approved by the affirmative vote of a majority of the qualified, electors of such town or district affected, voting on such proposition, if within thirty days after its adoption there be filed with the town clerk a petition subscribed and acknowledged by electors of the town qualified to vote upon a proposition to raise and expend money, in number equal to at least five - per centum of the total vote cast for governor in said town at the last general election held for the election of state officers * * * protesting against such act or resolution and requesting that it be submitted to the qualified electors of the town or district affected, for their approval or disapproval ” (emphasis supplied).
-Section 91 further provides that: (1) “ If such petition be so filed not more than forty-five days nor less than thirty days prior to a biennial town election, a proposition for the approval of such act or resolution shall be submitted at such biennial town election ”; or (2) “ If a petition be so filed at any other time, a proposition for the approval of such act or resolution shall be submitted at a special town election to be held not more than forty days after the filing of such petition ” (emphasis supplied). The section also makes provision for the filing of objections to such petition and goes on to say that “ If, within five days after the filing of such petition, a written objection thereto be filed with the town clerk, and a verified petition setting forth the objections be presented by the person so filing such objections to the supreme court or any justice thereof of the judicial district in which such town is located, such court or justice within twenty days shall determine any questions arising thereunder and make such order as justice may require. Such proceeding shall be heard and determined in the manner pre *533 scribed by section three hundred thirty-five of the election law ” (emphasis supplied).
On July 9, 1963 (being within the said statutory 30-day period) there was filed with the Town Clerk a petition containing some 309 signatures, which it is claimed was more than the requisite 219 constituting 5% of the total vote cast for Governor in said town at the last general election of State officers. Upon such filing, the Town Clerk did not reject said petition, but did, instead, issue a receipt therefor with the notation that the “receipt is not intended to pass on the legal effect of said petition”. Three days later, and on July 12, 1963 the Town Clerk submitted the petition to the special town counsel for his study and analysis with a request that he report to the Town Board on her behalf whether the petition was valid and adequate. Thirteen days still later and on July 25, 1963 the special town counsel reported to the Town Board that for various reasons the petition lacked some 34 valid signatures from the required 219, whereupon he recommended that the petition be rejected. Finally, and on August 12, 1963, the Town Board met and considered the petition and indicated a desire to contest same in court. Nothing was further done by anyone until the order to show cause initiating this proceeding was presented to the court for signature on September 3,1963.
Petitioners urge that it is now too late for the Town Board or this court to pass upon the sufficiency or validity of the petition filed with the Town Clerk on July 9, 1963, and, in their prayer for relief, they request that the Town Board make arrangements to hold the permissive referendum: (1) at the regular biennial town election; or (2) “on such other date prior thereto as the Court shall deem proper in the premises”. Respondent Town Board, on the other hand, in opposing the present application, takes the position that the afore-mentioned method of objecting to such petition for permissive referendum outlined in section 91 (written objections and application to the Supreme Court within five days) is not the exclusive method; that the Town Board’s rejection of the petition on July 25,1963 was timely; that the court has the power and should now in this proceeding pass upon its objections and go into the question of the validity and sufficiency of the petition as well as the qualifications of those electors who signed the petition and who were thereafter challenged by the special town counsel; and, finally, that the court by way of a declaratory judgment, should make a finding that the said petition is insufficient to justify any permissive referendum.
*534 The disposition of the contentions urged by both sides can be found in the clear, unambiguous and orderly mandates of section 91 of the Town Law. Concededly, the petition seeking the referendum was filed with the Town Clerk within the required 30 days after the adoption of the resolution. The receipt signed by the Town Clerk did not constitute a legal rejection of the petition within the contemplation of section 91 and, as a matter of fact, was not so intended by her to be a rejection since she in turn, three days later, referred it to the special town counsel for his study and analysis. Consequently, once the petition was filed and no written objections thereto being filed by anyone (including the Town Board) within five days thereafter, it was not only the function but the duty of the Town Board to determine when the election should be held and to make the statutory arrangements to fix a day for holding it within the timetable prescribed by law (Matter of Sinicropi, 135 N. Y. S. 2d 77, 83, affd. 284 App. Div. 893). This it failed and omitted to do.
The court finds that prima facie the petition was valid and sufficient on its face. It was not incumbent upon the Town Clerk to pass upon its validity or sufficiency once it was filed with her, as in the case of the Clerk of a city, where, under the provisions of section 16 of the City Home Buie Law, the City Clerk is authorized and duty-bound to “ examine each such petition so filed with him and shall, not later than thirty days after the date of its filing, transmit to the local legislative body of the city a certificate that he has examined it and has found that it complies or does not comply, as the case may be, with all the requirements of law” (see Matter of Potash v. Molik, 17 A D 2d 111). Section 91 means exactly what it says, and, it is conceded in this proceeding that at no time did anyone, including the Town Board within five days, ever (1) file written objections with the Town Clerk challenging the validity or sufficiency of the petition, and (2) present to the Supreme Court a verified petition setting forth the objections thereto and requesting the court to make a determination thereon. Thus, in the absence of the filing of written objections to the petition ■with the Town Clerk and the application to the Supreme Court within five days after the filing of the petition on July 9, 1963, it is now too late for this court to pass upon the objections heretofore raised by the special town counsel with respect to the signatures and qualifications of some of the persons who signed the petition and to make a determination with respect thereto.. Accordingly, the request by respondent Town Board in its answer that this court declare the petition so filed on July 9, 1963 to be insufficient, is denied. The mere report *535 and recommendation by the special town counsel to the Town Board on July 25, 1963 that the petition be rejected, is hardly a substitute for the afore-mentioned mandate of section 91, which, in the court’s opinion, is the exclusive method of attacking and challenging the validity or sufficiency of a petition seeking a permissive referendum. It is noteworthy, that in the cases of Matter of Sinicropi (135 N. Y. S. 2d 77, supra) and Matter of Village of Haverstraw (144 Misc. 37) cited by counsel and dealing with the subject, written objections to the petition seeking a permissive referendum were in each instance filed with the Clerk of the municipality within the statutory five-day period and verified petitions setting forth the objections were presented to the Supreme Court for determination within said period.
Insofar as petitioners seek in this proceeding to compel the Town Board to schedule and hold such permissive referendum, the court finds that at this late date it is impossibe to hold any election, whether it be a biennial or special election. The filing of the petition on July 9, 1963 was patently more than 45 days prior to the biennial town election, which, according to section 80 of the Town Law can only be held on “ Election Day” in an odd year, to wit, November 5, 1963. Therefore, since it is apparent that the petition was filed at the “ other time ” referred to in section 91, a special town election was required for the approval of the resolution, which, according to section 91, could only be held “ not more than forty days after the filing of such petition ”. Here, too, it is conceded that nothing was done by the Town Board within the 40-day period following the filing of the petition, or at any time, with respect to setting up the machinery for a special election. Thus, by its inaction the Town Board has created a situation whereby this court is now foreclosed from and would be unauthorized to order a special election at which the qualified electors could approve or disapprove the resolution.
In sum, therefore, as the matter now stands, the court is constrained to deny petitioners’ application and the petition is denied, but without costs. Although this court is unauthorized at this juncture to compel respondent Town Board to schedule and hold a permissive referendum election in the light of the afore-mentioned, nevertheless, the resolution of June 10, 1963 is ineffective, since the first sentence of section 91 provides that: “ Any such resolution or act of the town board * * * shall not take effect until thirty days after its adoption; nor until approved by the affirmative vote of a majority of the qualified electors * * * if within thirty days after its adoption *536 there be filed with the town clerk a petition * * * protesting against snch act or resolution and requesting that it be submitted to the qualified electors of the town or district affected, for their approval or disapproval ” (emphasis supplied). Thus, since the petition filed with the Town Clerk on July 9,1963 stands legally unchallenged, respondent Town Board’s resolution of June 10,1963 remains ineffective.